# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTERCONTINENTAL UNIVERSITY, INC. and CAREER EDUCATION CORPORATION, | )<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) Case No. 16 C 10669 |
| AMERICAN UNIVERSITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Career Education Corporation (CEC)—the parent corporation of American InterContinental University, Inc. (American InterContinental)—filed with the United States Patent and Trademark Office (PTO) a trademark application for the mark American InterContinental University. American University (AU) filed an opposition to the application claiming a likelihood of confusion with AU's own registered marks. Plaintiffs then filed this suit requesting a declaratory judgment that they are not infringing AU's trademarks (count 1), their continued use of their marks does not violate state law (count 2), any claims of infringement brought by AU are limited by the defenses of laches and acquiescence (count 3), and AU's registered trademark is invalid due to abandonment and lack of ownership (count 4). AU has moved to dismiss the suit for lack of personal jurisdiction. For the reasons discussed below, the Court finds that it lacks personal jurisdiction over AU and grants plaintiffs leave to propose an

appropriate jurisdiction for transfer.

## Background

Before the parties filed their motions, the Court granted plaintiffs' request for discovery on the issue of personal jurisdiction. The following facts are taken from plaintiffs' complaint and the evidence garnered from that discovery.

**A.     The parties**

American InterContinental is a Georgia corporation that owns a regionally accredited post-secondary education institution that operates under the name American InterContinental University. The university has physical campuses in Georgia and Texas and also offers online courses. CEC is a Delaware corporation that owns many schools and universities. In 2001, it purchased American InterContinental. American InterContinental and related entities have used the name "American InterContinental University" since 1997 in connection with higher education services.

AU is a non-profit corporation operating in Washington, D.C. AU operates a university with a campus in Washington D.C. and offers undergraduate and postgraduate degrees. Its representatives travel to states across the country to promote the school and recruit students. Since 2015, AU has conducted in Illinois 16 college fairs, 144 high school visits, 7 information sessions, and 151 student visits. AU also offers online graduate courses. Since 2014, 27 Illinois residents have enrolled in these courses. AU has hired vendors to help develop the online learning platform and market it through its website, one of which is Wiley / Deltak, a company based in Illinois. According to plaintiffs, all of these activities "necessarily involve[ ] AU's use of its claimed trademark in Illinois." See Pls.' Opp'n to Def.'s Mot. to Dismiss for Lack of

2

Personal Jurisdiction at 9.

**B.     History of proceedings in the PTO**

In October 1997, American InterContinental filed a trademark application for the mark "American InterContinental University" along with a logo. The mark was registered on January 5, 1999 as U.S. Trademark No. 2,216,174. Between 2005 and 2015, AU has registered a number of trademarks, including: "A New American University," "American International University," a logo for American University Washington College of Law, and "American University."

In April 2002, AU filed a petition to cancel registration no. 2,216,174, arguing that a likelihood of confusion existed with AU's alleged trademarks. The parties do not indicate how this petition was resolved. In September 2003, a company related to American InterContinental, AIU Educational Heritage, LLC, filed two trademark applications for logos incorporating the "American InterContinental University" trademark. In March 2004, the PTO concluded that no likelihood of confusion existed between these marks and any then-registered trademarks or then-pending trademark applications. In November 2005, AU filed an opposition with the PTO against AIU Educational Heritage's applications, again claiming a likelihood of confusion. In July 2008, AU and AIU Educational Heritage entered into a settlement agreement which provided that each entity reserved its rights to use its respective marks. In December 2008, AIU Educational Heritage merged into American InterContinental, and American InterContinental acquired all of AIU Educational Heritage's trademark rights.

Meanwhile, in February 2008, CEC filed a trademark application for the mark "American InterContinental University" and a new accompanying logo. In May 2008,

3

the PTO concluded that there was no likelihood of confusion between this mark and any then-registered trademarks or then-pending applications. In March 2009, AU filed an opposition with the PTO against CEC's application in which AU contends that there is a likelihood of confusion between AU's trademarks and the mark in CEC's application. AU also contends in its opposition that use of the "American InterContinental University" mark infringes AU's registered marks. The corresponding proceeding before the Trademark Trial and Appeal Board was stayed and has only recently resumed.

CEC and American InterContinental then filed this suit. They allege in the complaint that "[t]here has been an extensive history of interactions between the parties to this case" and AU has expressly claimed that Plaintiffs' continuing use of the mark "American InterContinental University" infringes AU's trademark rights. Compl. ¶ 46. As a result, plaintiffs request a declaratory judgment that its past and continued use of this mark does not infringe any right of AU (count 1), its past and continued use of this mark does not violate state law (count 2), any claims of infringement by AU are foreclosed or limited by laches and acquiescence (count 3), and AU's registration for the mark "American International University" is invalid due to abandonment and lack of ownership (count 4).

**Discussion**

AU asks this Court to dismiss plaintiffs' claims for lack of personal jurisdiction. It argues that there is no basis for general personal jurisdiction because it is not at home in Illinois. AU also argues that there is no basis for specific personal jurisdiction because plaintiffs' claims do not arise out of AU's contacts with Illinois. In their response, plaintiffs argue only that the Court may exercise specific personal jurisdiction

4

over AU. The Court therefore considers plaintiffs to have waived any assertion of general personal jurisdiction. *See Alioti v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2015).

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). Fed. R. Civ. P. 12(b)(2). Where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Ordinarily, the Court accepts as true all well-pleaded facts alleged in the complaint and resolves any factual disputes in favor of the plaintiff. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). But when the Court allows discovery and reviews evidence to resolve disputes of fact material to the question of jurisdiction, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

In a federal question case, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process upon that defendant. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Where the federal statute underlying plaintiff's claim does not authorize nationwide service, personal jurisdiction is governed by the law of the forum state. *Id.* Neither the Declaratory Judgment Act nor the Lanham Act authorizes nationwide service of process. *Tamburo v. Dworkin*, 601 F.3d 693, 699 & n.6 (7th Cir. 2010) (Declaratory Judgment Act); *Advanced Tactical*, 751 F.3d at 800 (Lanham Act). Therefore the law of

Illinois governs the Court's determination of personal jurisdiction.

Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be permitted under either the Illinois constitution or the United States Constitution. *Mobile*, 623 F.3d at 443 (citing 735 Ill. Comp. Stat. Ann. 5/2-209(c)). The Seventh Circuit has held that "there is no operative difference between these two constitutional limits" and therefore analyzes personal jurisdiction under Illinois law using the framework provided by federal due process requirements. *Mobile*, 623 F.3d at 443.

Under the due process clause of the Fourteenth Amendment, a defendant is subject to personal jurisdiction in a particular state only if the defendant had "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Specific jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The relationship giving rise to jurisdiction must stem from contacts that the defendant himself creates with the forum. *Advanced Tactical*, 751 F.3d 796, 801 (7th Cir. 2014).

The essential disagreement between the parties concerns what conduct gives rise to a plaintiff's claim for a declaratory judgment in this context. This, in turn, determines what contacts are relevant for purposes of specific jurisdiction. AU contends that, in a suit for a declaratory judgment of non-infringement of a trademark,

the conduct giving rise to the claim involves the defendant's efforts to enforce its trademark against the plaintiff. Plaintiffs argue that the relevant contacts involve AU's use of its trademark; they contend that their request for a declaratory judgment of non-infringement is based on AU's assertion that there is a likelihood of confusion between the two marks.

The Seventh Circuit has not directly addressed the issue, but case law from the Federal Circuit in a related context offers substantial guidance. In *Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324 (Fed. Cir. 2008), the court held that in a suit in which the plaintiff seeks a declaratory judgment of non-infringement of a patent, the relevant contacts are the defendant's enforcement activity, not its business activity. *Id*. at 1332. The court stated that in this type of action, "the claim asserted by the plaintiff relates to the wrongful restraint by the patentee on the free exploitation of non-infringing goods" and that the nature of plaintiff's claim "is to clear the air of infringement charges." *Id.* (internal quotation marks omitted). Therefore a declaratory judgment claim "neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Id*.

The Federal Circuit's conclusion regarding the "arising out of" requirement in declaratory judgment cases follows logically from the cause of action itself. In order to bring a claim under the Declaratory Judgment Act, "the defendant must have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face an infringement suit or the threat of one if it commences or continues the activity in

7

question." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). It therefore stands to reason that it is the defendant's conduct that creates a reasonable apprehension of suit—i.e., the conduct that gives rise to the plaintiff's claim—that must establish a connection with the forum state for personal jurisdiction purposes. Although *Avocent* applies this standard in the context of patent law, there is nothing unique to that context that would suggest the same logic does not apply to a suit for declaratory judgment of non-infringement of a trademark. Further, many district courts that have considered the same question in the trademark context have applied the standard from *Avocent* to determine personal jurisdiction. *See, e.g.*, *Ontel Prods. Corp. v. Mindscope Prods.*, 220 F. Supp. 3d 555 (D.N.J. 2016); *New Belgium Brewing Co., Inc. v. Travis Cty. Brewing Co., LLC*, No. 15-CV-00272-MEH, 2015 WL 2106329 (D. Co. May 1, 2015); *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496 (E.D. La. 2010).

Plaintiffs contend that AU's use of its trademarks in Illinois is "close enough" to the subject of their suit "to make the relatedness quid pro quo balanced and reasonable"; they argue that the fact that they are seeking a declaratory judgment does not change the focus of the personal jurisdiction analysis. Pls.' Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction at 12. In making this argument, plaintiffs cite *Hyatt International Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002), in which the Seventh Circuit considered a suit by plaintiff for a declaratory judgment that it had no contractual obligation to pay defendant any fees or commission for the development of a hotel. *Id*. at 711. The court considered the parties' entire course of dealings in determining whether there was a basis for specific personal jurisdiction. Likewise, plaintiffs argue, this Court should consider AU's use of its trademarks in Illinois. But the dealings

considered by the court in *Hyatt* were extensive contacts between *the parties* in the forum state. The defendant faxed the plaintiff in the forum state to propose a business deal, made numerous other faxes and phone calls to the plaintiff to discuss the terms, and visited the forum state to meet with the plaintiff. *Id.* at 710–11. The defendant also threatened to sue the plaintiff, a communication that presumably was sent to plaintiff in the forum state. Further, the defendant did not raise—and therefore the court did not address—the argument that only the defendant's efforts to initiate litigation to collect fees should be considered in the jurisdictional analysis. The Court is therefore unpersuaded that *Hyatt* calls for consideration of AU's use of its trademark in Illinois when advertising to potential students and counsels against applying the standard from *Avocent*.

Thus the relevant question for the Court is to what extent AU has purposefully directed efforts to enforce its trademark protections at Illinois and its residents. *See Avocent*, 552 F.3d at 1332. Enforcement efforts can take the form of, for example, cease-and-desist letters, judicial or extra-judicial enforcement, or creating an exclusive license agreement imposing some obligations on a party in the forum state. *Id.* at 1334. Here, plaintiffs have not offered any evidence that AU sent cease-and-desist letters or triggered enforcement proceedings in Illinois that would subject it to jurisdiction in this state. The only arguable enforcement effort by AU that is before the Court is the opposition AU filed with the PTO against CEC's recent trademark application, in which AU claimed a likelihood of confusion with its own marks. Assuming that this could suffice by itself to confer jurisdiction, it does not support personal jurisdiction in Illinois, because it was filed in Virginia. In summary, the Court concludes that plaintiffs cannot

demonstrate that AU purposefully directed its enforcement activities at Illinois. *See Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011).

Plaintiffs have therefore failed to show that AU has the minimum contacts with Illinois needed to support a finding of specific personal jurisdiction. The Court is willing to consider transferring the case to an appropriate jurisdiction as plaintiffs request, but plaintiffs have not yet suggested an alternative jurisdiction. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction at 15 n.13. Plaintiffs have until August 17, 2017 to propose a jurisdiction for transfer, and AU has until August 22, 2017 to raise any objections.

## Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over AU but reserves dismissal of the case until it considers the possibility of transfer. Plaintiffs are directed to propose an appropriate jurisdiction by August 17, 2017. AU is directed to respond with any objections by August 22, 2017. The case is set for a status hearing on August 24, 2017 at 8:45 a.m.

```
                                    _____
                                         MATTHEW F. KENNELLY
                                         United States District Judge
```

Date: August 14, 2017